# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SHIVA AYYADURAI, an individual, | : |
| | :   Case 1:16-cv-10853 |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| GAWKER MEDIA, LLC, a Delaware | : |
| limited liability company; SAM BIDDLE, an | : |
| individual, JOHN COOK, an individual, | : |
| NICHOLAS GUIDO ANTHONY DENTON, | : |
| an individual, and DOES 1-20, | : |
| | : |
| Defendants. | : |

-----------------------------------------------------------------

## MEMORANDUM OF LAW IN SUPPORT OF  DEFENDANTS GAWKER MEDIA, LLC, SAM BIDDLE AND JOHN COOK'S <u>MOTION TO DISMISS</u>

Rachel F. Strom, BBO # 666319
Katherine M. Bolger (*Pro Hac Vice* Application Pending)

LEVINE SULLIVAN KOCH & SCHULZ, LLP
321 West 44th Street, Suite 1000
New York, NY 10036
Tel: (212) 850-6100
Fax: (212) 850-6299
rstrom@lskslaw.com

*Counsel for Defendants Gawker Media, LLC, Sam Biddle and John Cook.*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES..................................................................................................ii

STATEMENT OF FACTS............................................................................................. 2

    A.    The Parties......................................................................................................... 2

    B.    The Prior Controversy:  The Washington Post Article and Subsequent
          Clarification...................................................................................................... 3

    C.    The First Article .............................................................................................. 4

    D.    The Second Article........................................................................................... 4

    E.    The Third Post .................................................................................................. 5

    F.    The Complaint................................................................................................... 5

ARGUMENT ........................................................................................................... 6

I.     PLAINTIFF'S CLAIMS BASED ON THE FIRST AND SECOND
      ARTICLES MUST BE DISMISSED AS TIME-BARRED ................................................ 6

II.    PLAINTIFF'S DEFAMATION CLAIM FAILS AS A MATTER OF LAW ................... 8

    A.    The Complained-of Statements Are Non-Actionable Opinion .............................. 8

    B.    Plaintiff Has Failed to Plausibly Allege Actual Malice ....................................... 13

III.   PLAINTIFF'S TAG-ALONG CLAIMS SHOULD BE DISMISSED ........................... 17

CONCLUSION ..................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                 **Page(s)**

*Abate v. Maine Antique Digest*,
  17 Mass. L. Rptr. 288, 2004 WL 293903 (Mass. Sup. Ct. Jan. 26, 2004) ................................7

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ...................................................................................................... 15, 16

*Biro v. Condé Nast*,
  963 F. Supp. 2d 255 (S.D.N.Y. 2013), *aff'd*, 807 F.3d 541 (2d Cir. 2015) ..................... 15, 16

*Bose Corp. v. Consumers Union of U.S., Inc.*,
  466 U.S. 485 (1984) .................................................................................................................. 14

*In re Celexa & Lexapro Mktg & Sales Practices Litig.*,
  2015 WL 3751422 (D. Mass. June 15, 2015) ........................................................................ 6

*In re Colonial Mortg. Bankers Corp.*,
  324 F.3d 12 (1st Cir. 2003) ...................................................................................................... 6

*Cook & Co. v. Volunteer Fireman's Ins. Servs.*,
  --- F. App'x ---, 2016 WL 4120661 (1st Cir. Aug. 3, 2016) .................................................. 18

*Curtis Publ'g Co. v. Butts*,
  388 U.S. 130 (1967) .................................................................................................................. 14

*Decoulos v. Schroder*,
  2013 WL 1795485 (D. Mass. Mar. 26, 2013) ....................................................................... 6, 7

*Doctor's Data, Inc. v. Barrett*,
  2016 WL 1086510 (N.D. Ill. Mar. 21, 2016) .......................................................................... 8

*Doe v. Medeiros*,
  168 F. Supp. 3d 347, 354 (D. Mass. 2016)............................................................................. 20

*Dulgarian v. Stone*,
  420 Mass. 843 (1995)............................................................................................................. 9, 18

*Faltas v. State Newspaper*,
  928 F. Supp. 637 (D.S.C. 1996) .............................................................................................. 11

*Feld v. Conway*,
  16 F. Supp. 3d 1 (D. Mass. 2014)......................................................................................... 6, 13

*Flynn v. Associated Press*,
  401 Mass. 776 (1988)................................................................................................................ 7

*Furlong v. Boston Med. Ctr.*,
    2016 WL 70450 (D. Mass. Jan. 6, 2016) .............................................................. 18

*Gargano v. Belmont Police Dep't*,
    476 F. Supp. 2d 39 (D. Mass. 2007) ...................................................................... 6

*Gertz v. Robert Welch, Inc.*,
    418 U.S. 323 (1974) ............................................................................................... 14

*Graboff v. Am. Ass'n of Orthopaedic Surgeons*,
    559 F. App'x 191 (3d Cir. 2014) ............................................................................ 7

*Gray v. St. Martin's Press, Inc.*,
    221 F.3d 243 (1st Cir. 2000) ................................................................................. 9

*Greenbelt Co-op Publ'g Ass'n v. Bresler*,
    398 U.S. 6 (1970) ............................................................................................... 11, 17

*Hustler Magazine, Inc. v. Falwell*,
    485 U.S. 46 (1988) ................................................................................................. 19

*Klayman v. City Pages*,
    2015 WL 1546173 (M.D. Fla. Apr. 3, 2015) .......................................................... 8

*Kurker v. Kassler & Feuer, P.C.*,
    1999 WL 33601320 (D. Mass. July 1, 1999) ........................................................ 20

*Levesque v. Doocy*,
    560 F.3d 82 (1st Cir. 2009) ................................................................................. 17

*Lluberes v. Uncommon Prods., LLC*,
    663 F.3d 6 (1st Cir. 2011) .................................................................................. 14

*Lyons v. Gillette*,
    882 F. Supp. 2d 217 (D. Mass 2012) ..................................................................... 7

*Lyons v. Globe Newspaper Co.*,
    415 Mass. 258 (1993) ........................................................................................... 9

*Martin v. Daily News L.P.*,
    121 A.D.3d 90 (N.Y. App. Div. 2014) .................................................................. 8

*Melville v. Town of Adams*,
    9 F. Supp. 3d 77 (D. Mass. 2014) ..................................................................... 15, 16

*Michel v. NYP Holdings, Inc.*,
    816 F.3d 686 (11th Cir. 2016) ............................................................................ 16

*Milkovich v. Lorain Journal Co.*,
    497 U.S. 1 (1990) ................................................................................................. 8, 9, 11

*Mourad v. Boston Globe Newspaper Co.*,
    60 Mass. App. Ct. 1106, 2003 WL 22902621 (Dec. 9, 2003).................................... 7

*N.Y. Times Co. v. Sullivan*,
    376 U.S. 254 (1964) ............................................................................................... 14

*Nat'l Ass'n of Gov't Emps./Int'l Bhd. of Police Officers v. BUCI Television, Inc.*,
    118 F. Supp. 2d 126 (D. Mass. 2000)...................................................................... 17

*Nicholson v. Promotors on Listings*,
    159 F.R.D. 343 (D. Mass. 1994) ............................................................................. 14

*Pendleton v. City of Haverhill*,
    156 F.3d 57 (1st Cir. 1998) ..................................................................................... 14

*Phantom Touring, Inc. v. Affiliated Publications*,
    953 F.2d 724 (1st Cir. 1992) .............................................................. 10, 11, 12, 13

*In re Phila. Newspapers, LLC*,
    690 F.3d 161 (3d Cir. 2012)................................................................................. 7, 8

*Piccone v. Bartels*,
    785 F.3d 766 (1st Cir. 2015) ............................................................................... 9, 18

*Polay v. McHahon*,
    468 Mass. 379 (2014).......................................................................................... 18, 19

*Pring v. Penthouse Int'l, Ltd.*,
    695 F.2d 438 (10th Cir. 1982) ................................................................................ 17

*Ruiz v. Bally Total Fitness Holding Corp.*,
    496 F.3d 1 (1st Cir. 2007) ........................................................................................ 6

*Ruiz Rivera v. Pfizer Pharm., LLC*,
    521 F.3d 76 (1st Cir. 2008) ...................................................................................... 6

*Russian Am. Found, Inc. v. Daily News LLP*,
    109 A.D.3d 410 (N.Y. App. Div. 2013).................................................................. 18

*Saldivar v. Pridgen*,
    91 F. Supp. 3d 134, 138 (D. Mass. 2015)............................................................... 20

*Salois v. Dime Sav. Bank of N.Y., FSB*,
    128 F.3d 20 (1st Cir. 1997) ...................................................................................... 7

iv

*Schatz v. Republican State Leadership Comm.*,
  669 F.3d 50 (1st Cir. 2012) ............................................................................ 15, 16

*Scholz v. Delp*,
  473 Mass. 242 (2015) ...................................................................................... 11, 12

*Shay v. Walters*,
  702 F.3d 76 (1st Cir. 2012) ............................................................................ 16

*Simas v. First Citizens' Fed. Credit Union*,
  63 F. Supp. 2d 110 (D. Mass. 1999).................................................................. 16

*Spelson v. CBS, Inc.*,
  581 F. Supp. 1195 (N.D. Ill. 1984).................................................................... 11

*Spencer Cos. v. Chase Manhattan Bank, N.A.*,
  81 B.R. 194 (D. Mass. 1987)............................................................................. 18

*St. Amant v. Thompson*,
  390 U.S. 727 (1968) ......................................................................................... 14

*Stern v. Cosby*,
  645 F. Supp. 2d 258 (S.D.N.Y. 2009) ................................................................ 17

*Tavoulareas v. Piro*,
  93 F.R.D. 35 (D.D.C. 1981) ............................................................................. 17

*Yohe v. Nugent*,
  321 F.3d 35 (1st Cir. 2003) ............................................................................ 9, 18

## Statutes

11 U.S.C. § 362 ..................................................................................................... 2

Mass. Gen. Laws 260
  § 2A ................................................................................................................ 6
  § 4 .................................................................................................................. 6

## Other Authorities

Fed. R. Civ. P. 12(b)(6) ......................................................................................... 1

Fed. R. Civ. P. 12(f) ............................................................................................. 20

Mass. Const. Pt. 1, art. XVI, *as amended by* art. LXXVII.............................................. 9

Dr. Shiva Ayyadurai ("Plaintiff"), who claims to have invented email when he was 14 years old in 1978, brings this claim for defamation and related torts against Gawker, a staff writer and editors, based on the publication of two articles in 2012 and one in 2014 (together, the "Articles"). Pursuant to Fed. R. Civ. P. 12(b)(6), Defendants Gawker Media, LLC ("Gawker"), Sam Biddle ("Biddle") and John Cook ("Cook") (the "Movants") hereby move to dismiss the Complaint as to them for failure to state a claim upon which relief may be granted.

As an initial matter, all of Plaintiff's claims based on the two articles published in 2012 must be dismissed as time-barred. More fundamentally, Plaintiff's defamation claim should also be dismissed because the statements complained of constitute protected opinion. The Articles describe both Plaintiff's claim that he invented email and the arguments of multiple respected authorities who claim otherwise. And while the Articles conclude that Plaintiff did not invent email, and that his claims to have done so are false and self-aggrandizing—an opinion shared by the *Los Angeles Times*, the *New York Times*, the *Washington Post* and the Smithsonian Institute—those conclusions are clearly statements of constitutionally protected opinion based on the facts disclosed in the Articles themselves.

The defamation claim should also be dismissed because Plaintiff, unquestionably a public figure, did not adequately allege that Movants published with actual malice—*i.e.*, that they possessed a subjective belief in the falsity of the allegedly defamatory statements. Instead, Plaintiff alleges only general wrongdoing by Gawker and Biddle, unrelated to the Articles. These allegations may reflect why Plaintiff chose to sue Gawker, but they do not sufficiently plead that Movants subjectively doubted the truth of the Articles at issue here.

The tag-along claims for intentional interference with prospective economic advantage, intentional infliction of emotional distress and negligent hiring and retention should also be dismissed because they fail on their merits.

### STATEMENT OF FACTS

A.    **The Parties**

Plaintiff is a scientist who claims in his Complaint, in many interviews, on his own website and in self-authored books that he invented email[1] in 1978, when he was 14 years old, when he created a computer program that he named and subsequently copyrighted "EMAIL." Compl. ¶¶ 1, 5, 14-15, 18-19.  Plaintiff has relentlessly promoted himself as the "inventor of email," going so far as to secure over one hundred internet domains, including InventorOfEmail.com.  *Id.* ¶¶ 1, 21-23 & Ex. B.  Plaintiff's claim was disputed before the publication of any of the Articles, including in *TIME*, the *Washington Post* and *Techdirt*.[2]

Until its sale in bankruptcy, Gawker was the publisher of several popular websites on a range of topics, including www.gizmodo.com ("Gizmodo"), focusing on the technology industry, and www.gawker.com ("Gawker.com"), a general interest news site.  Compl. ¶ 6. Biddle is a longtime journalist who was a senior staff writer at Gawker, *id.* ¶ 7, and the author of two of the Articles.  Cook was the Executive Editor of Gawker Media, the parent company that oversees editorial content across Gawker's internet properties.  *Id.* ¶ 8.  Plaintiff makes no factual allegations regarding Cook's involvement in the publication of any of the Articles at issue here.[3]

B.    **The Prior Controversy:  The Washington Post Article and Subsequent Clarification**

On February 17, 2012, the *Washington Post* (the "*Post*") published an article originally entitled, "V.A. Shiva Ayyadurai: Inventor of e-mail honored by Smithsonian,"[4] that discussed

---

[1] Declaration of Rachel F. Strom ("Strom Dec."), Exs. A-C (Plaintiff's website and books identifying him as inventor of email).

[2] *See* Strom Dec., Exs. D, E ("*Techdirt* Article") (summarizing sources questioning Plaintiff's claim) & F ("*Washington Post* Article").

[3] Defendant Denton is not a party to this motion because he has filed for voluntary bankruptcy protection, *see* Dkt. No. 6 (Suggestion of Bankruptcy), and this Action has been stayed as to him pursuant to the automatic stay provision of the United States Bankruptcy Code, 11 U.S.C. § 362.

[4] *See* Strom Dec., Ex. F.

the Smithsonian's acquisition of documents related to Plaintiff's creation of the "EMAIL"

program and credited Plaintiff as the inventor of email.  It provoked an immediate outcry from

the technology community, including an article in *Techdirt*, *see* note 2 *supra*, which pointed out

that the technology underlying networked messaging between computers—the communication

method commonly understood as email—had been invented years before Plaintiff began his

work, and that the first electronic message sent between two computers was sent in 1971 by Ray

Tomlinson via a government-funded network known as ARPANET.  *See* Strom Dec., Ex. E.

In response to this outcry, the *Post* initially published a "Clarification" stating: "A

number of readers have accurately pointed out that electronic messaging predates V.A. Shiva

Ayyadurai's work in 1978.  However, Ayyadurai holds the copyright to the computer program

called 'EMAIL,' establishing him as the creator of the 'computer program for [an] electronic

mail system' with that name, according to the U.S. Copyright Office."  *See id.*, Ex. F at 1.  And

on February 23, 2012, the Smithsonian published a press release that stated that in accepting Dr.

Ayyadurai's materials, "the museum did not claim that Ayyadurai was the 'inventor of email,' as

some press accounts have alleged."  *Id.*, Ex. I at 1.  *See also id.*, Exs. J & K.

By early March, the *Post* went even further, issuing a full correction, stating, among other

things, that "A previous version of this article incorrectly referred to V.A. Shiva Ayyadurai as

the inventor of electronic messaging."  *See id.*, Ex. F at 1.  And then, on March, 1, 2012, the

*Post*'s ombudsman penned an apology for having attributed the invention of email to Plaintiff:

> If I had taken a couple of hours and really absorbed all of the e-mail complaints sent to
> me, and read through the Internet links sent to me by people who knew better than I about
> the origins of electronic messaging . . . I would have figured out that Ayyadurai was not
> the inventor of e-mail. . . .  I apologize to the true inventors of e-mail for this mistake.[5]

---

[5] *See* Strom Dec., Ex. G at 5.

**C.**     <u>**The First Article**</u>

On February 22, 2012, amidst this ongoing controversy, Gawker published an article on Gizmodo, entitled "The Inventor of Email Did Not Invent Email?" (the "First Article").  Compl. ¶ 24 & Ex. A.  The First Article begins: "V.A. Shiva Ayyadurai is a fraud who has been masquerading for years as the pioneering mind behind email.  At least according to a bunch of geeks who mobilized from all corners of the digital world to try to set the record straight."  *Id*., Ex. A at 1.  The First Article summarized both sides of the ongoing controversy, referencing the *Post* Article and Tomlinson's website, among other sources.  *Id*. at 1-2.  It then explained the arguments of the "geeks" who claimed that Plaintiff did not invent email, as the term is generally understood.  *Id.* at 2-3.  After explaining Tomlinson's achievement, the First Article wondered, "That makes Ayyadurai's claim all the more strange—as if the most important part of the accomplishment was coining a term."  *Id*. at 3.  Finally, the Article concludes "[p]erhaps the truth is that email as we know it really shouldn't be considered a single person's invention."  *Id*.

**D.**     <u>**The Second Article**</u>

On March 5, 2012, just after the *Post*'s apology, Gawker published a second, more detailed article about the debate on Gizmodo (the "Second Article"), written by Sam Biddle and entitled "Corruption, Lies, and Death Threats: The Crazy Story of the Man Who Pretended to Invent Email."  Compl. ¶ 25 & Ex. B.  The Second Article discusses the arguments both of those who contest Plaintiff's claims to have invented email and those of Plaintiff himself.  *Id*., Ex. B.  Ultimately, however, the Second Article concludes:

> Shiva Ayyadurai didn't invent email – he created 'EMAIL,' an electronic mail system implemented at the University of Medicine and Dentistry in Newark, New Jersey.  It's doubtful he realized it as a little teen, but laying claim to the name of a product that's the generic term for a universal technology gives you acres of weasel room.  But creating a type of airplane named AIRPLANE doesn't make you Wilbur Wright.  *Id.* at 6.

E.      **The Third Post**

On September 8, 2014, more than two years later, upon Plaintiff's marriage to actress

Fran Drescher, Biddle wrote a short post entitled, "If Fran Drescher Read Gizmodo She Would

Not Have Married This Fraud" (the "Third Article").  Compl. ¶ 27 & Ex. C.  It reads in its

entirety:

> In 2012, an enterprising young Gizmodo blogger <u>published</u> the story of Shiva Ayyadurai,
> an MIT lecturer and renowned liar who pretends he invented email.  Today, he adds
> another achievement to the resume, marrying Fran Drescher.  Fran, you fucked up!  You
> had two years to discover that this guy is basically a big fake.  And now look at you:
> stuck with the guy, doomed to nod along to his cyber-lies for a lifetime, as you grow old
> together and reminisce about things you didn't invent.  The lesson here is clear: read
> Gizmodo daily, or your personal life is headed down the shitter.

*Id.*, Ex. C.  A hyperlink embedded in the word "published" links to the Second Article.  *Id.*

F.      **The Complaint**

After another two years, on May 10, 2016, Dr. Ayyadurai commenced this Action.  His

Complaint purports to assert a claim of libel as to Gawker, Biddle and Cook for several phrases

and sentence fragments that appear in the various Articles, such as the statement that Plaintiff is

a "big fake."  Compl. ¶¶ 68-76.  The Complaint asserts three additional claims arising out of the

publication of the Articles:  Intentional Interference with Prospective Economic Advantage

("IIPEA"), Intentional Infliction of Emotional Distress ("IIED") (both against Gawker, Biddle

and Cook) and Negligent Hiring and Retention (against Denton and Cook).  *Id.* ¶¶ 77-94.

## ARGUMENT

The Court need not reach the majority of Plaintiff's claims because two of the Articles

were published over four years before commencement of this Action—well outside of the

applicable Statute of Limitations.  Even if the Court reached those claims, they must all be

dismissed.  Plaintiff's defamation claim fails because (1) all of the complained-of statements are

non-actionable expressions of opinion and (2) Plaintiff has not, and cannot, plausibly allege that

5

any of the Movants acted with actual malice.  Plaintiff's three tag-along claims emanating from

the Articles also must be dismissed for the same reasons as his deficient defamation claim and

because he has independently failed to plead essential elements required under the law.

"To survive a motion to dismiss, the complaint must state a claim that is plausible on its

face." *Feld v. Conway*, 16 F. Supp. 3d 1, 3 (D. Mass. 2014).  "[T]he Court 'must assume the

truth of all well-plead[ed] facts and give plaintiff the benefit of all reasonable inferences

therefrom.'"  *Id.* (quoting *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir.

2007)).  "Dismissal is appropriate if plaintiff's well-pleaded facts do not 'possess enough heft to

show that plaintiff is entitled to relief.'"  *Id.* (quoting *Ruiz Rivera v. Pfizer Pharm., LLC*, 521

F.3d 76, 84 (1st Cir. 2008)).  "[I]n considering a motion to dismiss for failure to state a claim, a

court is required 'to consider not only the complaint but also matters fairly incorporated within it

and matters susceptible to judicial notice.'"  *Gargano v. Belmont Police Dep't*, 476 F. Supp. 2d

39, 41 (D. Mass 2007) (quoting *In re Colonial Mortgage Bankers Corp.*, 324 F. 3d 12, 15 (1st

Cir. 2003)).  "When the authenticity of a newspaper article cannot be *reasonably* questioned, a

court may take judicial notice of the fact that articles were published, without taking judicial

notice of the truth of their contents."  *In re Celexa & Lexapro Mktg & Sales Practices Litig.*,

2015 WL 3751422, at *3 (D. Mass. June 15, 2015) (taking judicial notice of newspaper articles

and press releases on motion to dismiss) (emphasis added).

## I.     PLAINTIFF'S CLAIMS BASED ON THE FIRST AND SECOND ARTICLES MUST BE DISMISSED AS TIME-BARRED

The First and Second Articles were published more than three years ago, and any claims

based on them are, therefore, time-barred.  *See* Mass. Gen. Laws 260 §§ 2A ("[A]ctions of tort . .

. shall be commenced only within three years next after the cause of action accrues."), 4 (three

year statute of limitations as to libel claims).  *See also Decoulos v. Schroder*, 2013 WL 1795485,

at *1 (D. Mass. Mar. 26, 2013) ("In Massachusetts, the statute of limitations for defamation or . . . infliction of emotional distress is three years."); *Mourad v. Boston Globe Newspaper Co.*, 60 Mass. App. Ct. 1106, 2003 WL 22902621, at *1 (Dec. 9, 2003); *Lyons v. Gillette*, 882 F. Supp. 2d 217, 235-36 (D. Mass 2012) (intentional interference with prospective business advantage); *Salois v. Dime Sav. Bank of N.Y., FSB*, 128 F.3d 20, 24 (1st Cir. 1997) (negligent hiring).

Moreover, for causes of action arising out of publication, "[t]he general rule . . . is that the cause of action accrues and the statutory period begins to run on the date of publication. 'The discovery rule does not apply to a public libel printed in a newspaper widely available to the public, including the plaintiff.'" *Mourad*, 2003 WL 22902621, at *1 (quoting *Flynn v. Associated Press*, 401 Mass. 776, 781 (1988)). Known as the "single publication rule," this principle also applies to articles, like those at issue here, that remain continuously available online long after the date of publication. *See Abate v. Maine Antique Digest*, 17 Mass. L. Rptr. 288, 2004 WL 293903, at *2 (Mass. Sup. Ct. Jan. 26, 2004) (applying single publication rule to continuously-available internet articles); *see also Graboff v. Am. Ass'n of Orthopaedic Surgeons*, 559 F. App'x 191, 195 (3d Cir. 2014). The First and Second Articles were published more than four years before this Action was filed. All claims based on those Articles must be dismissed.

Despite this clear authority, Plaintiff argues that the hyperlink embedded within the Third Article (the only Article published within the three year statute of limitations), and linking to the Second Article, constitutes a republication of the Second Article. Compl. ¶ 61. He further argues, even more tenuously, that because the Second Article in turn links to the First Article, the First Article has *also* been republished. *Id.* His argument fails as a matter of law.

Courts around the country have held that including a hyperlink does not constitute a republication of the original article. *See, e.g., In re Phila. Newspapers, LLC*, 690 F.3d 161, 175

7

(3d Cir. 2012) ("[T]hough a link and reference may bring readers' attention to the existence of an article, they do not republish the article.") (emphasis added); *Klayman v. City Pages*, 2015 WL 1546173, at \*12 (M.D. Fla. Apr. 3, 2015) ([T]he Court . . . could not find any Florida authority for the proposition that providing links to statements already published, without more, republishes those statements."), *aff'd*, 2016 WL 3033141 (11th Cir. May 27, 2016); *Martin v. Daily News L.P.*, 121 A.D.3d 90, 103 (N.Y. App. Div. 2014) ("continuous access to an article posted via hyperlinks to a website is not a republication").[6]

As a result, the hyperlink on the word "published" in the Third Article does not republish the Second Article. Instead, the hyperlink simply draws the reader's attention to the Second Article as would a footnote in a book. Accordingly, it cannot be considered a republication as a matter of law. And Plaintiff's argument that the Third Article somehow republishes the First Article by linking to the Second Article is even more strained. The Third Article does not link to the First Article or mention it at all. For the foregoing reasons, any claims based on either the First or Second Articles are time-barred as a matter of law.

## II.     PLAINTIFF'S DEFAMATION CLAIM FAILS AS A MATTER OF LAW

### A.     The Complained-of Statements Are Non-Actionable Opinion

Plaintiff's libel claim should be dismissed in its entirety on the alternate ground that the complained-of statements are statements of opinion, not fact. As the Supreme Court has held, the First Amendment requires that "a statement of opinion relating to matters of public concern which does not contain a provably false factual connotation will receive full constitutional

---

[6] This is true even where the article at issue favorably references the underlying content. *See In re Phila. Newspapers*, 690 F.3d at 175 ("[U]nder traditional principles of republication, a mere reference to an article, *regardless how favorable it is* as long as it does not restate the defamatory material, does not republish the material."); *Doctor's Data, Inc. v. Barrett*, 2016 WL 1086510, at \*33 (N.D. Ill. Mar. 21, 2016) (hyperlinks insufficient to constitute republication, despite endorsement of underlying content).

protection," so long as such a statement does not "reasonably impl[y] false and defamatory facts." *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990); *see also Lyons v. Globe Newspaper Co.*, 415 Mass. 258, 262 (1993); Mass. Const. Pt. 1, art. XVI, *as amended by* art. LXXVII.  A " statement cannot be defamatory if 'it is plain that the speaker is expressing a subjective view, an interpretation, a theory, conjecture, or surmise, rather than claiming to be in possession of objectively verifiable facts.'" *Piccone v. Bartels*, 785 F.3d 766, 771 (1st Cir. 2015) (quoting *Gray v. St. Martin's Press, Inc.*, 221 F.3d 243, 248 (1st Cir. 2000)).

In particular, a defamation claim is precluded "where the speaker communicates the non-defamatory facts that undergird his opinion.  Thus, the speaker can immunize his statement from defamation liability by fully disclosing the non-defamatory facts on which his opinion is based." *Piccone*, 785 F.3d at 771.  In other words, where an author makes plain all of the predicate facts on which his statement is based, that statement is pure opinion and is *not actionable*, "'no matter how unjustified or unreasonable the opinion may be or how derogatory it is.'" *Yohe v. Nugent*, 321 F.3d 35, 42 (1st Cir. 2003) (quoting *Dulgarian v. Stone*, 420 Mass. 843, 850 (1995)). "Whether a statement is a verifiable fact or an opinion can be decided by the court as a matter of law," requiring it to examine "the totality of the circumstances in which the specific challenged statements were made, including the general tenor and context of the conversation and any cautionary terms used by the person publishing the statement." *Piccone*, 785 F.3d at 772.

Here, Plaintiff's claim is based entirely on statements of opinion.  As to the First Article, the only statement challenged is the phrase "[Dr.] Ayyadurai is a fraud," Compl. ¶ 69, which Plaintiff claims accuses him of committing a crime, *id.* ¶ 71.  But as used in the First Article, "fraud" is a statement of opinion based on fully disclosed facts contained in the Article.  In context, the allegedly defamatory statement reads:  "V.A. Shiva Ayyadurai is a fraud who has

9

been masquerading for years as the pioneering mind behind email.  At least according to a bunch

of geeks who mobilized from all corners of the digital world to try and set the record straight."

*Id*., Ex. A.  Immediately, the Article signals to the reader that the Article is going to be about a

debate in the technology community about whether Plaintiff is a fraud.  Consistent with this

theme, the remainder of the First Article is dedicated entirely to explaining the full factual basis

for statements critical of Plaintiff, including the one Plaintiff challenges.  The Article details the

ongoing controversy, including the *Post* and *Techdirt* Articles; explains that the debate centers

on whether copyrighting a computer program named "EMAIL" is equivalent in stature to

creating the actual technology for networked communications; and recites the history of

ARPANET and the messages first sent by Ray Tomlinson.  *Id*.  Significantly, Plaintiff does not

and could not challenge the validity of any of these factual predicates or assert that Gawker's

opinion is somehow based on additional facts *not* revealed in the Article.  As such, the

challenged statement in the First Article is, without question, constitutionally protected opinion.

In this respect, the facts here mirror those at issue in *Phantom Touring, Inc. v. Affiliated

Publications*, 953 F.2d 724 (1st Cir. 1992).  There, the First Circuit affirmed the dismissal of a

defamation claim stemming from a series of articles in the *Boston Globe* in which the author

harshly criticized the producers of a musical-comedy version of "The Phantom of the Opera" that

was decidedly not the famous Broadway show.  The articles stated that the production company

was "trying to score off the success of Andrew Lloyd Weber's 'Phantom'" and was "thriving off

the confusion created by the two productions."  *Id.* at 726, 729.  Thus, the articles asserted, the

show was "a rip-off, a fraud, a scandal, a snake-oil job," and a "fake."  *Id*.  But the First Circuit

affirmed the lower court's conclusion that these statements were non-actionable opinion: because

the author "not only discussed all the facts underlying his views but also gave information from

10

which readers might draw contrary conclusions." *Id*. at 728, 730.  Indeed, "because all sides of the issue, as well as the rationale for [the reporter's] view, were exposed, the assertion of deceit reasonably could be understood only as [the reporter's] personal conclusion about the information presented, not as a statement of fact." *Id*. at 730.  The court also emphasized that, in that context, such terms were "figurative and hyperbolic," such that the court could "imagine no objective evidence to disprove it," two other hallmarks of non-actionable opinions.  *Id*. at 728.

In addition, the court recognized that terms like "fraud" and "fake" in this context, rather than stating a provably false fact, were instead protected rhetorical hyperbole.  *Id*. at 731 n.13. Rhetorical hyperbole is "loose, figurative, or hyperbolic language which would negate the impression that the writer was seriously maintaining" an actual fact about the plaintiff. *Milkovich*, 497 U.S. at 21; *Greenbelt Co-op Publ'g Ass'n v. Bresler*, 398 U.S. 6, 14 (1970) (use of the word "blackmail" to describe the plaintiff's hard-nosed negotiating tactics not reasonably understood as accusation of crime); *Spelson v. CBS, Inc.*, 581 F. Supp. 1195 (N.D. Ill. 1984), *aff'd*, 757 F.2d 1291 (7th Cir. 1985) (calling plaintiff a "practitioner of fraud" and a "con-artist" in the prevention and treatment of cancer, and accusing him of the "cruelest form of medical fraud" were protected non-actionable statements of opinion); *Faltas v. State Newspaper*, 928 F. Supp. 637, 643, 646-48 (D.S.C. 1996), *aff'd*, 155 F.3d 557 (4th Cir. 1998) (criticizing plaintiff as someone who "will lie to suit her agenda" not actionable because the term "lie" had been "used in the context of challenging plaintiff's position on a given controversial subject as to which 'experts' obviously disagree, often in less than collegial tones").  So too, here:  all the facts that form the basis of the opinion that Plaintiff is a "fraud" are contained in the First Article and any reasonable reader would understand it to express Gawker's opinion about them.  *See also Scholz v. Delp*, 473 Mass. 242, 253-54 (2015) (affirming summary judgment for newspaper for articles

published in entertainment news column speculating that tensions with bandmate contributed to musician's suicide because the articles disclosed all relevant facts and the columns' conclusions were plainly speculation based on those disclosed facts), *cert. denied*, 136 S. Ct. 2411 (2016).

The challenged statements in the Second Article fail for the same reasons. Plaintiff challenges only the sentences that state he engaged in "semantic tricks, falsehoods, and a misinformation campaign," as well as "revisionism." Compl. ¶ 70. Even the most cursory review of the Second Article, however, reveals that here, as in *Phantom Touring*, the complained-of statements are opinions based on facts set forth in the Second Article itself, including that: (1) Plaintiff created an "electronic mail system" called "EMAIL," and not the underlying technology for exchanging messages between computers; (2) Ray Tomlinson sent the first text letter between two computers on ARPANET in 1971; (3) using specific language in the header of electronic messages (like "to," "from" and "cc") dates to as early as 1973; (4) other computer programs that also facilitated the exchange of inter-computer messages existed long before Plaintiff's "EMAIL" program was created; (5) the email technology currently in use has evolved significantly from the 1970s while still relying on the basic message exchange conventions introduced before Plaintiff created his program; (6) Plaintiff uses a public relations professional, acquired many domain names like InventorOfEmail.com and seeks media coverage; (7) Tomlinson and other early computer programmers generally referred to exchanges between computers as "messages" and not "emails" (and thus Plaintiff might deserve credit for coining the term); and (8) Plaintiff could have independently arrived at the terminology used in his program from paper-based office communication methods. *Id.*, Ex. B. The Second Article also quotes Plaintiff extensively, noting his conclusion that the "messages" exchanged between computers by Tomlinson on ARPANET were not true "emails," and his belief that he was being

12

attacked by an "elite group of people who think they own innovation." *Id.* It is based on these undisputed facts, fully presented to the reader, that the Second Article announces its opinion: Plaintiff did not invent email, and is engaged in "revisionism," "semantic tricks, falsehoods, and a misinformation campaign." *Id.* Here, as in *Phantom Touring*, the complained-of statements are opinion, based on fully-disclosed facts, and not actionable.

Finally, Plaintiff challenges several statements in the Third Article, namely that he is a "fraud," a "renowned liar," a "big fake," and engaged in "cyber-lies." *Id.* ¶ 72. But these statements are again hyperbolic rhetoric expressing that Plaintiff did not create email, as it is commonly understood. *See, e.g., Feld*, 16 F. Supp. at 4 ("The phrase 'Mara Feld is … fucking crazy,' when viewed in that context, cannot reasonably be understood to state actual facts about plaintiff's mental state."). The Article is addressed to Plaintiff's new wife, the actress Fran Drescher, and begins "Fran, you fucked up!". Compl., Ex. C. In a tone of mock concern, the Article alerts her to her husband's past exaggerations regarding the invention of email, and graphically concludes, "The lesson here is clear: read Gizmodo daily, or your personal life is headed down the shitter." It is ridiculous to regard this statement as intended to be taken literally. *Id.* Here, as in *Phantom Touring*, "[n]ot only is this commentary figurative and hyperbolic . . . we also can imagine no objective evidence to disprove it." 953 F.2d at 728. The Third Article cannot sustain a claim of defamation.

Overall, the content, tone and context of the Articles make clear that they are expressing the view that Plaintiff did not create email, as that term is understood. This is opinion, and it is not actionable.

### B.     Plaintiff Has Failed to Plausibly Allege Actual Malice

Even if this Court concludes the allegedly defamatory statements are not opinion, it should still dismiss Plaintiff's defamation claims because he has not pled any facts that plausibly

allege that any of the Movants acted with actual malice.  The First Amendment prohibits a public figure from recovering damages for a defamatory falsehood unless he proves by clear and convincing evidence "that the statement was made with 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not."  *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964); *see also Curtis Publ'g Co. v. Butts*, 388 U.S. 130, 153 (1967); *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 333-34 (1974).  Plaintiff must establish "that the defendant realized that his statement was false or that he subjectively entertained serious doubts as to the truth of his statement."  *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 511 n. 30 (1984); *see also St. Amant v. Thompson*, 390 U.S. 727, 731 (1968) (same).

There can be no dispute that Plaintiff is a public figure.  Indeed, he has pled as much.  "Whether an individual is a public figure is a matter of law for the court to decide."  *Nicholson v. Promotors on Listings*, 159 F.R.D. 343, 344 (D. Mass. 1994).  While some individuals are "general purpose public figures," due to their pervasive fame and notoriety, "far more commonly . . . 'an individual voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues'—the so-called limited-purpose public figure."  *Lluberes v. Uncommon Prods., LLC*, 663 F.3d 6, 13 (1st Cir. 2011) (quoting *Gertz*, 418 U.S. at 351).  "That 'limited range of issues' is identified 'by looking to the nature and extent of an individual's participation in the particular controversy giving rise to the defamation.'"  *Id*. (quoting *Gertz*, 418 U.S. at 352).  *See, e.g.*, *Pendleton v. City of Haverhill*, 156 F.3d 57, 69 (1st Cir. 1998) (plaintiff a public figure because he "invited public scrutiny of the qualities that equipped him to teach in the Haverhill school system"); *Lluberes*, 663 F.3d at 17 (plaintiffs are public figures because they "enjoyed access to the press and exploited it by orchestrating a PR blitz to garner public support and mute their critics").

In this case, the Court need look no further than Plaintiff's Complaint to make this determination. *See Biro v. Condé Nast*, 963 F. Supp. 2d 255, 270 (S.D.N.Y. 2013) ("Where the question of whether a plaintiff is a public figure can be determined based upon the pleadings alone, the Court may deem a plaintiff a public figure at the motion to dismiss stage."), *aff'd*, 807 F.3d 541 (2d Cir. 2015). Plaintiff pleads that he is a "world-renowned scientist, inventor, lecturer, philanthropist and entrepreneur." Compl. ¶ 1. He has been the subject of, and has actively participated in, media specifically about the invention of email. *Id.* ¶¶ 1, 21-23. He alleges that he "has been recognized internationally for his developments in early social media portals, email management technologies, and contributions to medicine and biology." *Id.* ¶ 2. Before any article was published by Gawker, Plaintiff alleges he was interviewed by *TIME*, his papers had been acquired by the Smithsonian, and both the *Post* and *Techdirt* had weighed in on the issue of Plaintiff's invention of email. *Id.* ¶¶ 1, 21, 32. He is a public figure.

As a result, for Plaintiff to survive a motion to dismiss, First Circuit precedent requires that he plausibly allege facts that would show actual malice. *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 56 (1st Cir. 2012) ("[T]o access discovery mechanisms, a plaintiff must *first* produce a complaint that passes the plausibility test—a test that helps keep defendants from wasting time and money in discovery on 'largely groundless' claims." (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007)) (emphasis in original); *see also Melville v. Town of Adams*, 9 F. Supp. 3d 77, 86 (D. Mass. 2014) (dismissing defamation claim on motion to dismiss because plaintiff was public figure and failed to allege facts sufficient to plead actual malice). That is, he must do more than merely allege "actual malice buzzwords." *Schatz*, 669 F.3d at 56. Instead, he "must plead 'plausible grounds' to infer actual malice by alleging 'enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of' actual

malice." *Biro*, 807 F.3d at 546 (quoting *Twombly*, 550 U.S. at 556); *Shay v. Walters*, 702 F.3d

76, 82 (1st Cir. 2012) ("While the plaintiff's complaint contains conclusory allegations about

'ill-will' and 'actual malice,' it contains no factual assertions that in any way lend plausibility to

these conclusions."); *Schatz*, 669 F.3d at 58 ("[T]o make out a plausible malice claim, a plaintiff

must still lay out enough facts from which malice might reasonably be inferred.").[7]

Here, Plaintiff has failed to allege any facts to support a plausible inference of malice, nor

could he.  The Articles here relied almost entirely on named sources (none of whom Plaintiff

challenges), and quoted Plaintiff extensively about his opposing views.  Compl., Exs. A-C.  The

Articles duly give Plaintiff credit for his contribution to the history of computer-based

communication—the copyright of the "EMAIL" program—and even suggest he may deserve

credit for the "email" name itself.  *Id.*  In short, there is nothing alleged that could give rise to

actual malice.  And any alleged patina of actual malice is undermined by the Articles' inclusion

of Plaintiff's side of the story.  *See, e.g.*, *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 703 (11th

Cir. 2016) ("[W]here the publisher includes information contrary to the general conclusions

reached in an article, that showing tends to undermine the claims of malice.").  Here, Plaintiff

offers only the kind of actual malice buzzwords rejected in *Schatz*, completely unconnected to

what he has to show: that each Movant knew that each alleged defamatory statement was made

with knowledge of its falsity at the time of publication.  669 F.3d at 56.

Instead of pleading any facts addressing actual malice as to the Articles at issue here,

---

[7] In addition, the Complaint makes no allegations *at all* regarding Cook's role in the Articles, or regarding Biddle's role in the First Article, much less their subjective belief as to the truth of the complained-of statements.  The defamation claim must therefore be dismissed as to them. *Melville*, 9 F. Supp. 3d at 110-11 (dismissing defamation claims against defendants after analyzing allegations as to each defendant separately, and emphasizing that actions attributed to town Selectmen could not be attributed to director of separate entity); *Simas v. First Citizens' Fed. Credit Union*, 63 F. Supp. 2d 110, 116 (D. Mass. 1999) ("[Plaintiff] must . . . proffer sufficient evidence as to how *each* defendant purportedly defamed him.") (emphasis in original).

Plaintiff instead spends pages of his Complaint unloading irrelevant *ad hominem* attacks on Gawker and Biddle.  Compl. ¶¶ 50-67.   Even if they were true, actual malice does not include "spite, hostility or deliberate intention to harm," and to hold otherwise would be an "error of constitutional magnitude."  *Greenbelt*, 398 U.S. at 10; *see also Nat'l Ass'n of Gov't Emps./Int'l Bhd. of Police Officers v. BUCI Television, Inc.*, 118 F. Supp. 2d 126, 129-32 (D. Mass. 2000) (rejecting actual malice claim based in part on evidence that publication was motivated by a desire for retaliation for earlier slights).  Nor does pleading that Movants failed to adhere to journalistic standards in drafting *other* articles provide any basis for inferring actual malice as to *these* Articles.  *See Levesque v. Doocy*, 560 F.3d 82, 90 (1st Cir. 2009) ("Actual malice then is measured neither by reasonably prudent conduct, nor an industry's professional standards, rather, it is wholly subjective.").  Instead, in order to prove actual malice, a plaintiff must produce evidence related to the article at issue.  Evidence of prior or unrelated misconduct is inadmissible.  *Tavoulareas v. Piro*, 93 F.R.D. 35, 44 (D.D.C. 1981) (granting protective order against request for information from newspaper about complaints, lawsuits and retractions in unrelated cases); *Stern v. Cosby*, 645 F. Supp. 2d 258, 286 (S.D.N.Y. 2009) ("[T]he law is clear that absent evidence of 'pressure to produce sensationalistic or high-impact stories with little or no regard for their accuracy,' pressure to publish sensational stories 'cannot, as a matter of law, constitute evidence of actual malice.'") (emphasis in original) (citation omitted); *see also Pring v. Penthouse Int'l, Ltd.*, 695 F.2d 438, 443 (10th Cir. 1982) ("The magazine itself should not have been tried for its moral standards.").  In short, Plaintiff's extensive allegations against Gawker and Biddle are irrelevant to whether these Articles were published with actual malice.

III.     **PLAINTIFF'S TAG-ALONG CLAIMS SHOULD BE DISMISSED**

Plaintiff's tag-along claims for intentional interference with prospective economic advantage, intentional infliction of emotional distress and negligent hiring must also be

dismissed because they are predicated on the same behavior that forms the basis of Plaintiff's failed defamation claim.  *See, e.g.*, *Piccone*, 785 F.3d at 774 (IIPEA claim "premised on precisely the same facts as the defamation claim should be rejected") (citation omitted); *Yohe*, 321 F.3d at 44 (rejecting IIED claim "premised on precisely the same facts as [the] defamation claim"); *Russian Am. Found, Inc. v. Daily News LLP*, 109 A.D.3d 410, 413 (N.Y. App. Div. Dep't 2013) (dismissing negligent hiring claim where defamation claim fails).

These claims also fail on their elements.  As to the IIPEA claim, Plaintiff has failed to plausibly allege any improper motive or means, as required.  *Cook & Co. v. Volunteer Fireman's Ins. Servs.*, --- F. App'x ---, 2016 WL 4120661, at *2 (1st Cir. Aug. 3, 2016).  In particular, where "there is no indication that the report was broadcast for any reason other than the reporting on an issue of public concern," courts reject recovery for IIPEA.  *Dulgarian*, 420 Mass. at 852. Here, there is no such indication.  In addition, Plaintiff has also failed to plead that the Movants intended to interfere with Plaintiff's business.  *See Spencer Cos. v. Chase Manhattan Bank, N.A.*, 81 B.R. 194, 204 (D. Mass. 1987).[8]

As to the IIED claim, "'[t]he standard for making a claim of [IIED] is very high.'"  *Polay v. McHahon*, 468 Mass. 379, 385 (2014) (citation omitted).  "Liability cannot be predicated on mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities, nor even is it enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by malice, or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort."  *Id.* (quotation marks and citation omitted).  "Conduct qualifies as extreme and

---

[8] Finally, Plaintiff has also failed to specifically plead *any* contemplated or future business relationships as required to state a claim.  *See Furlong v. Boston Med. Ctr.*, 2016 WL 70450, at *11 n.15 (D. Mass. Jan. 6, 2016).

outrageous only if it goes beyond all possible bounds of decency, and is regarded as atrocious, and utterly intolerable in a civilized community." *Id.* at 385-86 (additional punctuation and citations omitted). Here, there is no such outrageous conduct. *See, e.g.*, *id.* at 386 (filing false police reports against plaintiffs, verbally attacking plaintiffs, and continuously monitoring and recording plaintiffs' home not "sufficiently extreme and outrageous conduct" to state a claim). Finally, "public figures … may not recover for the tort of intentional infliction of emotional distress by reason of publications such as the one here at issue without showing in addition that the publication contains a false statement of fact which was made with 'actual malice.'" *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 56 (1988). As fully demonstrated above, Plaintiff has not made a plausible assertion of fact regarding actual malice as to any of the complained-of statements. Plaintiff's IIED claim must therefore be dismissed.

Finally, Plaintiff's negligent hiring claim is the most baseless of all and should be immediately dismissed. In his Complaint, Plaintiff cites—but notably neither quotes nor attaches—an article written by Biddle and claims that Biddle admits in that article to "drug abuse" and "abuse of narcotics." Compl. ¶¶ 56, 89-90.[9] This allegation is as false as it is egregious. In fact, in the article referenced in the Complaint, Biddle writes not about his abuse of drugs but about his decision to use medically prescribed anti-anxiety medication under the care of a psychiatrist to treat his clinically diagnosed anxiety disorder. The story mentions neither narcotics nor abuse—just the responsible use of prescription medications (none of which are narcotics) in consultation with a medical doctor to treat an illness. Plaintiff fails to mention that Biddle has been profiled in the *New York Times* and sought after as an interviewee by

---

[9] *See* Strom Dec., Ex. H.

CNBC, MSNBC, Bloomberg, NPR and the BBC.[10]  By making these  false allegations against

Biddle, it is Plaintiff who seeks to "libel and destroy" Biddle, not the other way around.  This

Court has the power to strike this kind of abusive pleading.  *See* Fed. R. Civ. P. 12(f); *Kurker v.*

*Kassler & Feuer, P.C.*, 1999 WL 33601320, at *1 (D. Mass. July 1, 1999) (striking allegations

that "would be actionable as libelous if served up in any form other than a legal pleading").

In addition, the Court should dismiss the negligent hiring claim because Plaintiff has

failed to plead its elements.  Specifically, he has pled neither that Biddle's so-called "drug use"

resulted in the publication of allegedly defamatory material, *see, e.g.*, *Doe v. Medeiros*, 168 F.

Supp. 3d 347, 354 (D. Mass. 2016) (dismissing negligent hiring claim because "there is not a

sufficient connection between Medeiros' criminal background and the misconduct Doe alleges to

support liability"), nor that Movants knew of the alleged abuse, *id.*; *Saldivar v. Pridgen*, 91 F.

Supp. 3d 134, 138 (D. Mass. 2015) (negligent hiring and training claim not adequately alleged

where plaintiff identified no prior violation by employee that could have put defendant on

notice), *aff'd*, 818 F.3d 14 (1st Cir. 2016).  This claim, so obviously designed to bully and

embarrass Biddle, must be dismissed.

## CONCLUSION

For all the foregoing reasons, Gawker Media, LLC, Sam Biddle and John Cook

respectfully request that the Court dismiss the Complaint as against them in its entirety.

Dated:  October 10, 2016                     Respectfully submitted,
                                             LEVINE SULLIVAN KOCH & SCHULZ, LLP
                                             By:  s/ Rachel F. Strom
                                             Rachel F. Strom, BBO # 666319
                                             321 West 44th Street, Suite 1000, New York, NY 10036
                                             Tel: (212) 850-6100/Fax: (212) 850-6299
                                             rstrom@lskslaw.com
                                             *Counsel for Gawker Media, LLC, Sam Biddle,  John Cook*.

---

[10] *See* Strom Dec. ¶¶ 13-14.

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 10th day of October, 2016, I electronically transmitted the foregoing **MEMORANDUM OF LAW** to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants, as Plaintiff's counsel, and all counsel of record:

> **Timothy Cornell**
> One International Place, Suite 1400
> Boston, MA 02110
> Tel: (617) 535-7763
> Fax: (617) 535-7721
> tcornell@cornelldolan.com

I further certify that on October 10, 2016, I served a true copy of same by US Mail upon:

> **Charles J. Harder, Esq.**
> 132 S. Rodeo Drive, Suite 301
> Beverly Hills, California 90212
> Tel. (424) 203-1600
> Email: CHarder@HMAfirm.com

> *s/ Rachel F. Strom*
> Rachel F. Strom